# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-02151-COA

STEPHANIE DENISE DAVIES DOBSON            APPELLANT

v.

JOHN THOMAS DOBSON, JR.            APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/03/2013 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | S. CHRISTOPHER FARRIS |
| | TERRY L. CAVES |
| | STEVEN J. IRWIN |
| | RISHER GRANTHAM CAVES |
| ATTORNEY FOR APPELLEE: | CLEMENT S. BENVENUTTI |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | AWARDED PLAINTIFF/APPELLEE PRIMARY PHYSICAL CUSTODY OF MINOR CHILD, AWARDED JOINT LEGAL CUSTODY, AND GRANTED DEFENDANT/APPELLANT EXTENDED WEEKEND VISITATION ONCE A MONTH |
| DISPOSITION: | AFFIRMED – 03/31/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ROBERTS AND MAXWELL, JJ.**

**IRVING, P.J., FOR THE COURT**:

¶1. This appeal arises from a final custody order entered by the Chancery Court of Pearl River County in favor of the appellee, John Dobson. We are called upon to decide whether

there is substantial evidence supporting the chancery court's findings as to certain *Albright*[1]

factors and whether the chancery court erred by awarding the appellant, Stephanie Dobson,

only one extended weekend of visitation per month.

¶2.     Finding no reversible error, we affirm.

FACTS

¶3.     John and Stephanie married on November 11, 2004.[2] The parties had only one child,

Hayden, who was born on January 6, 2010.  In September 2012, without notifying John,

Stephanie quit her job in Picayune, and she and Hayden moved to Winnfield, Louisiana, to

live with her parents.

¶4.     On October 16, 2012, John filed a complaint for divorce, requesting, among other

things, temporary and permanent custody of Hayden.  On November 2, 2012, the chancery

court entered a temporary custody order granting the parties joint physical custody of

Hayden, and pursuant to that order, Hayden spent alternating two-week periods with

Stephanie and John.  The case went to trial on October 22, 2013.  Following trial, the

chancery court awarded John and Stephanie joint legal custody of Hayden, and awarded John

primary physical custody.  The chancery court also extended the two-week visitation

schedule until July 2014, and, as stated, the chancery court granted Stephanie one weekend

---

[1] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983) (setting forth the factors to be considered by the chancery court when making child-custody determinations).

[2] John and Stephanie lived in Bay St. Louis, Mississippi, until Hurricane Katrina destroyed their home there.  They then relocated to Picayune, Mississippi.

of visitation per month, beginning in August 2014.  Stephanie now appeals.

DISCUSSION

¶5.    In *Brumfield v. Brumfield*, 49 So. 3d 138, 142 (¶9) (Miss. Ct. App. 2010) (internal

citations and quotations omitted), this Court stated:

> A [chancery court's] findings of fact will not be disturbed unless manifestly
> wrong or clearly erroneous.  This Court will not disturb the findings of a
> [chancery court] when supported by substantial evidence unless the [chancery
> court] abused [its] discretion, was manifestly wrong, clearly erroneous[,] or an
> erroneous legal standard was applied.  Furthermore, we will affirm the
> child-custody decree if the record shows any ground upon which the decision
> may be justified.  We will not arbitrarily substitute our judgment for that of the
> [chancery court, which] is in the best position to evaluate all factors relating
> to the best interest of the child.

> *I.*    Albright *Factors*

¶6.    It is well-settled that "the polestar consideration in child[-]custody cases is the best

interest and welfare of the child." *Albright*, 437 So. 2d at 1005.  In determining the best

interest and welfare of the child, the chancery court must consider the *Albright* factors.

*Blakely v. Blakely*, 88 So. 3d 798, 803 (¶16) (Miss. Ct. App. 2012) (citation omitted).

Additionally,

> [a]n appellate court must find a [chancery court] in error where the [chancery
> court] improperly considers and applies the *Albright* factors.  In determining
> whether the [chancery court] abused [its] discretion in applying the *Albright*
> factors, the appellate court reviews the evidence and testimony presented at
> trial under each factor to ensure the [chancery court's] ruling was supported
> by [the] record.

*Tanner v. Tanner*, 956 So. 2d 1106, 1108 (¶7) (Miss. Ct. App. 2007) (internal citations and

quotation marks omitted).  Stephanie only challenges the chancery court's findings as to five

3

specific *Albright* factors, which we discuss in turn.

### A. Age of the Child

¶7. In the final judgment, the chancery court found that "[t]he minor child of the parties, Hayden, is three (3) years of age, a male child and in good health. This factor is neutral as to both parties." On appeal, Stephanie argues that the chancery court failed to adhere to the tender-years doctrine[3] when considering Hayden's age. In response, John argues that the chancery court was not obligated to consider the tender-years doctrine in this case. John also argues that the chancery court's "ruling [was] that the 'tender[-]years' presumption, [even] if it applies in this case, [was] overcome by the facts."

¶8. The age of the child is only one of several factors to be considered during the *Albright* analysis. *Mercier v. Mercier*, 717 So. 2d 304, 307 (¶14) (Miss. 1998) (citation omitted); *see also Albright*, 437 So. 2d at 1005. In this case, it is clear that the chancery court considered Hayden's age under this factor, and, after considering the evidence, the chancery court found that this factor was neutral as to the parties. Nothing in the record suggests that this factor favored Stephanie more than it favored John; therefore, the chancery court's finding was supported by the evidence. This issue is without merit.

### B. Continuity of Care

¶9. During trial, Stephanie testified that before the separation, Hayden attended daycare

---

[3] The tender-years doctrine is based on the proposition that "a child of tender years should be with [his] mother, unless she is an unfit person to have [his] care and custody." *Case v. Stolpe*, 300 So. 2d 802, 804 (Miss. 1974).

at Nanny Nations in Picayune, while she and John were at work. Stephanie stated that her work shift, at that time, began at or around 7:00 a.m. and ended at or around 8:00 p.m. John testified that prior to the separation, he worked at the Michoud Plant in New Orleans, Louisiana. He stated that his work shift began at 6:30 a.m. and ended at 3:00 p.m. Both parties testified that prior to the separation, Stephanie was primarily responsible for caring for Hayden in the mornings and for taking Hayden to daycare. John, who would return to Picayune from New Orleans at or around 4:00 p.m., was primarily responsible for picking Hayden up from daycare and for caring for Hayden during the evenings and nights.

¶10. In the final judgment, the chancery court found that

> [t]he evidence revealed that both parties cared for the minor child; when [Stephanie] worked late at her job at Winn-Dixie[] (where she worked as a cake decorator since August of 2010), [John] would pick up the minor child and take care of the necessities needed prior to bedtime. ([John] arrives home from work at 4:00 p.m. and picks up [the] child from daycare.) [Stephanie] would care for the minor child when she was not working. This factor is neutral as it relates to both parties.

¶11. Stephanie argues that, in assessing the continuity of care, the chancery court failed to give consideration to the fact that she provided exclusive care for Hayden after the separation. John insists that the chancery court did not err by finding that the continuity-of-care factor favored both parties because the parties shared continuity of care after the separation.

¶12. In *Caswell v. Caswell*, 763 So. 2d 890, 893 (¶8) (Miss. 2000) (internal citation omitted), the Mississippi Supreme Court stated:

[T]he time between the separation and the trial should be considered in determining continuity [of care]. . . . However, this does not change the *Albright* factors, which includes looking to continuity of care prior to the separation. Thus, both of these factors need be considered, giving neither factor greater weight.

In *Copeland v. Copeland*, 904 So. 2d 1066, 1076 (¶39) (Miss. 2004), our supreme court reiterated this sentiment by finding that the time between separation and trial should be considered when determining continuity of care in child-custody cases. While it is true that Hayden was in Stephanie's exclusive care for the two months following the couple's separation, we find this two-month period to be inconsequential. As a result of the temporary custody order entered on November 2, 2012, the parties equally shared care of Hayden from that date until the chancery court entered the final custody order. The chancery court found that this factor favored both parties equally, and, even when considering the continuity of care after the separation, there was substantial evidence to support this finding. This issue is without merit.

###      C.      *Parenting Skills*

¶13.    The chancery court found:

[The t]estimony revealed that the minor child is loved and cared for by both parents with assistance from . . . [d]aycare . . . . Since the separation of the parties[,] [Stephanie] testified that she lives with her parents and is a ["]stay at home [m]om" in order to provide the care needed for her minor child; [John] testified that since the separation, he relies on the . . . [d]aycare to assist when he is at work and the help of his family. ([John] testified that he works from 6:30 a.m. until 3:00 p.m. daily and relies on family to assist with getting the child to daycare but is at home to pick him up).

¶14.    Stephanie argues that the chancery court's failure to make a ruling as to which parent

6

the parental-skills factor favored proves that there was not substantial evidence to support the chancery court's findings as to that factor. John insists that the chancery court's failure to make a determination as to the parental-skills factor is insignificant because the chancery court's recitation of facts in the final judgment ultimately supports the custody award.

¶15.    In *Murphy v. Murphy,* 797 So. 2d 325, 329 (¶15) (Miss. 2001), the chancery court found that two of the *Albright* factors favored the parties equally. *Id*. As to the remaining factors, the chancery court "simply summarized the testimony relevant to each factor without commenting on which testimony [the chancery court] found to be the most persuasive and without stating which parent the factor favored." *Id*. After reviewing the evidence, the chancery court awarded custody to the mother, and the father appealed. *Id*. at (¶¶15-16). On appeal, our supreme court stated that "[t]he [chancery court's] failure to make precise findings is not especially significant if we can[,] with confidence[,] state that [the chancery court] considered the proper facts." *Id*. at 330 (¶19). Likewise, in this case, the chancery court's failure to reach a conclusion as to which parent this factor favored was not reversible error because the record clearly establishes the facts that the chancery court relied on when making the final custody determination. Moreover, the chancery court's factual findings were supported by the evidence. This issue is without merit.

### D.    Willingness and Capacity to Provide Primary Child Care

¶16.    Stephanie testified that she remained unemployed after relocating to Winnfield because her lack of employment allowed her to spend uninterrupted time with Hayden. She

stated that, at the time of trial, her parents handled all of her financial responsibilities, including Hayden's care. Stephanie also indicated that she would remain unemployed as long as her parents were willing to provide for her. John, who was still employed, testified that he relied on his mother and on daycare for assistance with caring for Hayden.

¶17. In the final judgment, the chancery court found that

> [Stephanie] ha[d] not sought employment in an effort to be at home with the child. It appeared from the testimony offered at trial, that her parents are providing financial support to allow her to remain at home. Both [John] and [Stephanie] are willing and have the capacity to provide the primary care of the minor; however[,] [Stephanie] has not provided testimony to indicate her willingness to provide support for her child separate from that accorded by her parents, nor was there testimony regarding future plans for employment, continued school, etc. The court has continuing concerns regarding [Stephanie's] positive [tetrahydrocannabinol (THC)] levels in June 2013. Though she testified that she was in the room with people smoking marijuana at her sister's wedding in Mexico, the court also noted that she testified that she lost a job in 2004 for smoking marijuana. This factor favors [John].

¶18. Stephanie argues that, in determining the parties' willingness and capacity to provide primary care, the chancery court failed to consider the fact that she can provide continuous care for Hayden because she is unemployed. John insists that the chancery court did not err by considering Stephanie's lack of employment when making a determination as to the parties' willingness and capacity to provide primary child care.

¶19. Before finding that this factor favored John, the chancery court found that Stephanie had not indicated a willingness to provide financial support for Hayden. There was substantial evidence from which the chancery court could have found that Stephanie was unwilling to provide financial support, for Stephanie testified that she would not seek

8

employment as long as her parents were willing to provide for her financially. Stephanie provided no further explanation for her decision to remain unemployed. Additionally, the chancery court did not err by considering Stephanie's employment status under this factor. *See Jordan v. Jordan,* 963 So. 2d 1235, 1241 (¶14) (Miss. Ct. App. 2007) (finding that "employment can be evidence of a parent's capacity to provide care for his or her children," although "the parent earning a greater income is [not] entitled to some preference in a custody dispute based solely on that consideration"). This issue is without merit.

### E. Mental Health of Parents

¶20. At the time of trial, Stephanie suffered from migraine headaches. She testified that she took medication to treat the migraines. Stephanie also testified that she took prescription drugs, and that she visited a doctor once a month for treatment of her bipolar disorder. She admitted to testing positive for THC in June 2013, although she denied using marijuana at that time. She also admitted that in 2004, one of her past employers terminated her because she tested positive for marijuana.

¶21. In the final judgment, the chancery court found that

> [John] is 38 years of age and [Stephanie] is 33 years of age. [John] testified that he is [in] good health and takes Adderall for ADHD. [Stephanie] testified that she sometimes suffers from migraine headaches and suffered at some point from bipolar disorder. She further testified that she suffered from PTSD [(post-traumatic stress disorder)] after Hurricane Katrina and has not had anxiety attacks since December 2011. [Stephanie] is still under the care of her physician and is seen monthly to monitor the drugs Celera and Adderall. This factor favors [John].

¶22. Stephanie argues that, in evaluating her mental health, the chancery court placed too

9

much emphasis on her bipolar disorder and ignored the fact that she receives treatment. In response, John insists that the chancery court did not err by considering Stephanie's mental-health issues.

¶23. There is no evidence in the record to support Stephanie's argument that the chancery court "attached too much weight" to her mental-health issues. In the final judgment, the chancery court discussed both Stephanie's and John's health issues, and noted that Stephanie was undergoing continued treatment for her bipolar disorder. These findings were supported by the evidence, and the record does not support a finding that the chancery court abused its discretion in evaluating this factor. This issue is without merit.

*II.    Visitation*

¶24. As to visitation, the chancery court found:

> [Stephanie] shall have one extended weekend visitation per month with [Hayden] based on holidays accorded by the child's school, i.e.[,] staff development days, Columbus Day, etc.

> ****

> In addition to all of the custody periods, set forth above, the parties may agree to additional periods of visitation being mindful of the travel distance for each party and the child's best interest. The parties shall confer regarding any necessary modifications or adjustments in the schedule set forth above.

¶25. As stated, Stephanie argues that the chancery court committed reversible error by restricting her visitation to only one extended weekend each month, without awarding her summer visitation. On appeal, John raises no objection to Stephanie being awarded four weeks of summer visitation.

10

¶26. In *Suess v. Suess*, 718 So. 2d 1126, 1130 (¶15) (Miss. Ct. App. 1998) (internal citations omitted), this Court found:

> [T]he [chancery court] has broad discretion in determining appropriate visitation between a parent and a child, as well as any limitation on such visitation. The [chancery court] must consider the best interests of the child in matters involving visitation and be sensitive to the rights of the non-custodial parent, while at the same time recognizing the need for the non-custodial parent to maintain a healthy, loving relationship with his child.

¶27. "[T]here must be evidence presented that a particular restriction on visitation is necessary to avoid harm to the child before [a chancery court] may properly impose the restriction. Otherwise, the [chancery court's] imposition of a restriction on a non-custodial parent's visitation is manifest error and an abuse of discretion." *Harrington v. Harrington*, 648 So. 2d 543, 545 (Miss. 1994) (citation omitted).

¶28. Here, there is nothing in the record that suggests that the chancery court placed a restriction on Stephanie's visitation. In fact, as stated, the chancery court granted Stephanie and John the authority to "agree to additional periods of visitation" and to make "any necessary modifications or adjustments in the [visitation] schedule[.]" It cannot be argued legitimately that the chancery court restricted Stephanie's visitation while giving the parties the authority to modify visitation as they saw fit. This issue is without merit.

¶29. **THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**