# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01320-COA

**LISA STEWART TEDFORD** APPELLANT

**v.**

**JONATHAN TEDFORD** APPELLEE

DATE OF JUDGMENT:                07/19/2019
TRIAL JUDGE:                     HON. LAWRENCE LEE LITTLE
COURT FROM WHICH APPEALED:       CALHOUN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:          CARNELIA PETTIS FONDREN
ATTORNEY FOR APPELLEE:           AMERY EWING MOORE
NATURE OF THE CASE:              CIVIL - CUSTODY
DISPOSITION:                     AFFIRMED - 03/02/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Lisa Tedford appeals from Calhoun County Chancery Court's judgment, claiming the chancellor erred in his assessment of the *Albright*[1] factors, resulting in her ex-husband, Jonathan Tedford, receiving custody of their minor children. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Lisa and Jonathan Tedford were married on August 29, 2012. After their marriage, Lisa and Jonathan continued to reside in their home in Banner, Mississippi. During their marriage, the couple had two minor children, J.M.T., born in 2014, and A.G.T., born in

---

[1] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

2015.[2]

¶3.     In February 2018, the couple separated, and in March 2018, Jonathan filed for divorce from Lisa on the statutory ground of irreconcilable differences. At the time of their separation, Lisa and the children were still residing at the marital home.

¶4.     Lisa was issued a summons on April 3, 2018, but failed to appear at the temporary child-custody hearing on April 27, 2018. The court granted Jonathan temporary physical and legal custody of both minor children. Lisa denied that service was proper because the court did not receive or file the summons until May 10, 2018, even though Lisa had been served on April 16, 2018.

¶5.     In early October 2018, prior to filing her answer and counter-claim, Lisa voluntarily submitted to a drug screening. The test returned a negative result. Lisa again submitted to a drug screening on November 28, 2018. That test also produced a negative result. The next day, Lisa requested a modification to the temporary order granting custody to Jonathan.

¶6.     Before ruling on the modification, the court required Lisa to complete another drug screening using a hair-follicle test. The court received Lisa's negative test results on December 7, 2018. Seven days later, on December 14, 2018, the court entered a second temporary order granting Lisa and Jonathan joint legal custody of the children, with Jonathan having physical custody and Lisa having visitation privileges.

¶7.     While Lisa and Jonathan agreed to an irreconcilable divorce, they could not agree on the issue of custody. Before the commencement of trial, the parties agreed that they would

---

[2] We use initials to protect the identities of the minor children.

leave the issues of child custody, child support, and property division to the court's determination. The trial began on March 19, 2019, and concluded on April 17, 2019. Both Lisa and Jonathan introduced evidence and presented several witnesses.

¶8. At trial, Jonathan's witnesses testified that although Jonathan worked, he was actively a part of his children's lives, whether it be in their day-to-day care or activities. They described the relationship between Jonathan and his children as close and explained that the children always wanted to be near their father. Jonathan's mother, Maime Tedford, explained that Jonathan and the children resided with her and that she cared for the children at night while Jonathan worked. However, Jonathan testified that he planned to change from the night shift to the day shift to be home with the children at night.

¶9. On the contrary, Lisa testified that she and Jonathan had agreed that once they started a family, Lisa would cease her employment to become a stay-at-home mother. Lisa testified that while Jonathan worked, she took care of everything for the children, making her their primary caregiver. Lisa admitted that she was employed for a certain amount of time and that Jonathan had remained at home with the children. However, she still maintained that she was the children's primary caregiver.

¶10. Regarding the children, Jonathan testified that he attempted to enroll J.M.T. in preschool but could not do so. Jonathan explained that Lisa had not taken J.M.T. to get the required shots, nor had she provided Jonathan with J.M.T.'s birth certificate or social security card in enough time to complete registration. While Lisa did not deny Jonathan's testimony, she asserted that failure to register J.M.T. was Jonathan's fault because he could have

3

obtained a new birth certificate and social security card for J.M.T.

¶11. Besides the children's schooling, the parties and their witnesses testified to other matters. Jonathan and his sister testified that on multiple occasions, Lisa exhibited abusive behavior toward Jonathan, including explicit name-calling in front of the children. Jonathan also claimed that he had to remove the children from their home on at least two occasions because Lisa and her friend would smoke marijuana in front of them. Along with the verbal abuse, Jonathan testified that Lisa attacked him twice and attempted to have the police arrest him. Lisa did not deny any of Jonathan's allegations. Rather, she admitted using marijuana and consuming alcohol. She also admitted to using explicit language but did not see it as a problem.

¶12. Both Lisa and Jonathan testified that they had concerns with the other's parenting skills. According to Lisa, Jonathan had driven the children to Oxford, Mississippi, without using car seats. On a separate occasion, while under Jonathan's care, the children started a fire in the kitchen. Regarding Lisa, Jonathan questioned her parenting skills since her daughter from a previous relationship had become a teenage mother and used illegal drugs.

¶13. After the trial's conclusion, the chancery court issued its opinion on June 14, 2019, finding that it was in the children's best interest for Jonathan to have physical custody and for both parents to share joint legal custody. Soon after, on July 19, 2019, the chancery court entered its final judgment. Aggrieved by the chancery court's ruling, Lisa appeals, claiming the chancellor erred in his assessment of the *Albright* factors, resulting in Jonathan receiving custody of their minor children.

4

**STANDARD OF REVIEW**

¶14. Unless the chancellor abused his discretion, was manifestly in error, or applied an erroneous legal standard, this Court will not reverse a chancery court's decision. *Pevey v. Pevey*, 270 So. 3d 250, 257 (¶18) (Miss. Ct. App. 2018). This Court cannot re-weigh evidence in a child-custody case and must defer to the chancellor's findings. *Harden v. Scarborough*, 240 So. 3d 1246, 1251 (¶9) (Miss. Ct. App. 2018). As long as a chancellor's findings of fact are supported by substantial credible evidence, they will remain undisturbed on appeal. *Pevey*, 240 So. 3d at 257 (¶18).

**DISCUSSION**

¶15. We must address whether the chancellor, in this case, properly determined child custody. Lisa claims the chancellor erred by granting custody of her minor children to her ex-husband, Jonathan. She contends that the court's determination should be reversed because the chancellor "erred in his analysis of the *Albright* factors." Specifically, Lisa takes issue with the chancellor's findings in favor of Jonathan in seven of the twelve *Albright* factors.

¶16. In child custody cases, it is well established that the child's best interest and welfare are the guiding points. *Albright*, 437 So. 2d at 1005 ("[T]he polestar consideration . . . is the best interest and welfare of the child."). To meet these goals, the Court evaluates the following factors introduced in *Albright*: (1) the age, sex, and health of the child; (2) "the continuity of care prior to the separation"; (3) the parenting skills of each parent; (4) "the willingness and capacity to provide primary child care"; (5) "the employment of the parents and the responsibilities of that employment"; (6) the "physical and mental health and age of

5

the parents"; (7) "emotional ties of the parent and the child"; (8) the moral fitness of each parent; (9) "the home, school, and community record of the child"; (10) the preference of the child; (11) the stability of the home environment; and (12) "other factors relevant to the parent-child relationship." *Id*.

¶17.    "The *Albright* factors are intended to ensure that the chancellor follows a process that leads to consideration of all facts that are relevant to the child's best interest." *Vassar v. Vassar*, 228 So. 3d 367, 375 (¶27) (Miss. Ct. App. 2017). Although "the *Albright* factors are important, . . . the chancellor has the ultimate discretion to weigh the evidence the way he sees fit." *Hall v. Hall*, 134 So. 3d 822, 827 (¶19) (Miss. Ct. App. 2014). However, the chancellor must explain his reasoning. It is reversible error if a chancellor fails to articulate the reasoning behind his findings. *Davidson v. Coit*, 899 So. 2d 904, 911 (¶18) (Miss. Ct. App. 2005).

¶18.    We give deference to the weight that the chancellor assigns to each *Albright* factor. *Smith v. Smith*, 206 So. 3d 502, 513 (¶24) (Miss. 2016). This deference includes his decision regarding the evidence's weight and credibility. *Mabus v. Mabus*, 890 So. 2d 806, 816 (¶38) (Miss. 2003). An appellate court may not intervene merely to replace the chancellor's judgment with its own. *Bower v. Bower*, 758 So. 2d 405, 412 (¶33) (Miss. 2000). Instead, we must decide if substantial evidence supports the ruling. *Davidson*, 899 So. 2d at 913 (¶29).

¶19.    Lisa claims the chancellor erred in his analysis of several *Albright* factors. In particular, she maintains the chancellor improperly found that the following factors weighed in favor of Jonathan: (1) the age, health, and gender of the children, (2) the parent with best

6

parenting skills and willingness and capacity to provide primary care, (3) the employment of the parent and responsibilities of the employment, (4) the emotional ties of parents to the children, (5) the moral fitness of the parent, (6) the home, school, and community record of the children, and (7) the stability of home environment and employment of each parent. Consequently, Lisa believes the chancellor erred by finding that none of the factors favored her.

### 1. Age, Health, and Gender of the Children

¶20. Lisa asserts that this factor should have favored her because of the children's age and the sex of A.G.T. In particular, she claims the chancellor erred because he failed to conduct a "tender years" analysis for both children. However, it is well established that the tender-years doctrine "has been diminished and is now only a presumption." *Barbaro v. Smith*, 282 So. 3d 578, 597 (¶84) (Miss. Ct. App. 2019) (quoting *Smith v. Smith*, 206 So. 3d 502, 513 (¶26) (Miss. 2016)). Age is now one of several factors to be considered. *Id.*

¶21. At the time of trial, J.M.T. was five years old, and A.G.T. was three years old. The chancellor noted that both children were in good health and that both parents took part in the children's healthcare prior to the couple's separation. However, the chancellor found that this factor favored Jonathan. J.M.T. had speech issues, which had improved with Jonathan's help. Jonathan also attempted to register the children in HeadStart but could not since Lisa failed to get the children the required immunization shots. The chancellor properly found this factor to favor Jonathan, and the finding is supported by substantial evidence.

### 2. Parenting Skills and Willingness and Capacity to Provide Primary Child Care

¶22. The chancellor reasoned that while both parties were willing to provide primary care for the children, Lisa's parenting skills were questionable. The chancellor chose to give weight to the fact that Lisa's eldest daughter used drugs, became a teenage mother, and was sexually assaulted by Lisa's brother.

¶23. Lisa disagrees that this factor favored Jonathan. She argues that the chancellor erred "in failing to address the poor parenting habits of Jonathan." However, the chancellor acknowledged the concerning incidents that occurred while the children were in Jonathan's care. As stated above, "the chancellor has the ultimate discretion to weigh the evidence the way he sees fit." *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003). The chancellor chose not to give much weight to Jonathan's incidents—which he had the discretion to do. Therefore, we decline to find that the chancellor erred in concluding that this factor favored Jonathan.

### 3. Employment of the Parent and Responsibilities of that Employment

¶24. The chancellor found that this factor favored Jonathan because he indicated that he intended to change his work schedule to the day shift to participate in the children's activities once the children began school. The chancellor also noted that Jonathan's family was there for help and support and provided the children with a "church home." However, Lisa argues that the chancellor erred because he "assumed that Lisa could not afford [to] spend the summer off with the children" and "substituted the paternal grandmother . . . opposed to their mother."

¶25. "This factor appears to be applied in two ways: either to prefer a parent who draws

8

an income over one who does not, or, more often, to prefer a parent who works less or not at all and can therefore spend more time with his children." *Owens v. Owens*, 950 So. 2d 202, 210 (¶26) (Miss. Ct. App. 2006). Lisa would have liked the chancellor to apply the latter, but he was within his discretion to apply the former, which he did. There was no error in the chancellor's finding in favor of Jonathan.

### 4. Emotional Ties of Parents to the Children

¶26. The chancellor noted that both Jonathan's and his witnesses' testimony established he had strong emotional ties to the children. The chancellor found that Lisa's testimony only centered around the children's emotional ties to her subsequent to the separation. After considering the testimony and evidence presented, the chancellor found this factor in favor of Jonathan. The record contains substantial evidence to support the chancellor's finding. Therefore, we find no error.

### 5. Moral Fitness of the Parent

¶27. Lisa disagrees with the chancellor's finding because he "relied on [her] prior relationship for the evaluation of her moral fitness . . . ." The chancellor found that the moral fitness factor favored Jonathan, citing not only Lisa's prior relationships but also her consumption of alcohol, use of illegal drugs, explicit language, and prior arrests to support the determination. There is substantial evidence to support the chancellor's factual finding, and we find no abuse of discretion as to this factor.

### 6. Home, School, and Community Record of the Children

¶28. Lisa asserts that it was Jonathan's fault that J.M.T. was not enrolled in preschool since

they were in his care at the time of registration. She also claims that the chancellor "ignored [her] involvement in the children's church attendance . . . ." As previously mentioned, the children were not currently enrolled in school due to the lack of immunization shots. However, Jonathan did enroll the children in preschool for the following year. Contrary to Lisa's assertion, the chancellor acknowledged that both Lisa and Jonathan testified that they regularly took the children to church. Nevertheless, Jonathan's father is the pastor of their family church, and the entire family is engaged with the church on a daily basis. After reviewing the record, we conclude that substantial evidence supports the chancellor's finding that this factor favors Jonathan.

### 7. Stability of Home and Employment of Each Parent

¶29. In finding that this factor favored Jonathan, the chancellor recognized that although both Lisa and Jonathan lack employment stability, the children had their own space and beds with Jonathan. Lisa admitted that her home was in need of serious repair. The chancellor's determination on this factor is supported by substantial credible evidence.

¶30. A review of the record shows that the chancellor properly considered all evidence and testimony before him. In his opinion, the chancellor personally addressed each factor and properly articulated his rationale for each. This evaluation resulted in Jonathan being awarded custody of A.G.T. and J.M.T. As to Lisa's argument that the chancellor erred in finding that seven of the twelve factors favored Jonathan and that none of the factors favored her, we give deference to the weight that the chancellor assigned to each *Albright* factor. This Court will not re-weigh the evidence. In considering the children's best interest and welfare,

the record establishes that substantial credible evidence supported the chancellor's ruling.

Accordingly, we affirm the chancellor's judgment on this issue.

**CONCLUSION**

¶31.   Finding no error, the judgment is affirmed.

¶32.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**