# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00028-COA

JUSTIN BRYCE BROWN                                          APPELLANT

v.

KRISTIN FRANKLIN ANSLUM                                     APPELLEE

DATE OF JUDGMENT:               12/20/2016
TRIAL JUDGE:                    HON. DAVID SHOEMAKE
COURT FROM WHICH APPEALED:      SIMPSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         M. JUDITH BARNETT
ATTORNEYS FOR APPELLEE:         JEFFREY BIRL RIMES
                                SARAH LINDSEY OTT
NATURE OF THE CASE:             CIVIL - CUSTODY
DISPOSITION:                    AFFIRMED - 07/24/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     This appeal arises from a custody dispute between Justin Bryce Brown and Kristin Franklin Anslum.  Brown appeals the decision of the Simpson County Chancery Court awarding him and Anslum joint physical and legal custody of their minor child.  After review of the record, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Brown and Anslum both lived with K.B.[1] from the time of her birth until she was four months old; however, the two were never married.  They separated on August 15, 2013.  The

---

[1] To protect the minor child's confidentiality, we will refer to the child throughout this opinion as "K.B."

separation spurred from an argument over free Saints football game tickets Anslum received from her boss. Because of conflicting stories, the actual events of that night are somewhat unknown.

¶3. Brown contends that he caught Anslum inviting another man to the game with her because he told Anslum they could not afford to attend. Anslum maintains that she was on the phone with Brown's mother asking her to babysit their minor child and Anslum's other child because Brown said he would not keep them even if he stayed home. Anslum alleges that Brown beat her up and hit her oldest daughter. However, Brown and his parents contend that Anslum knocked her head against the refrigerator and willfully fell to the floor. Further, they maintain that Anslum did not have any visible bruises after the alleged altercation.

¶4. After the separation, K.B. lived with Anslum from August 2013 to April 2014. In August 2013, Brown filed a complaint for determination of paternity and sole custody, and Anslum filed an answer and counter-claim, requesting sole custody of K.B. In November 2013, a temporary order was entered awarding Anslum temporary legal and physical custody subject to Brown's supervised visitation at his parents' home. However, in January 2014, Brown tested positive for methamphetamine. As a result, his right to visitation of K.B. was suspended. Subsequently, he took another drug test and passed. Then, upon the recommendation of the Guardian Ad Litem (GAL), the parties agreed to joint physical custody of K.B.

¶5. In both April 2014 and August 2014, Anslum was admitted to Brentwood Hospital. The first incident was because of an altercation between Anslum and her stepmother.

2

Anslum alleged that her stepmother tried to choke her, but law enforcement reported seeing Anslum grabbing her own neck. The second incident was due to what was described as an overdose on Valium after a trip to Pensacola, Florida. It was alleged that Anslum was very intoxicated and could not adequately care for her children during the trip. However, Anslum disputes these allegations.

¶6. Brown's mother, Marcia, had custody of K.B. from April 2014 to August 2014 due to Anslum having a nervous breakdown and Brown failing his drug test. However, in July 2014, the GAL recommended that Brown receive the right to full custody of K.B., subject to Anslum's right to visitation every other week.

¶7. In 2016, Anslum's doctor gave her a good report and stated that Anslum was only on one medication at the time.[2] Anslum also reported that her mood, maturity, and cognitive abilities had improved, and that her doctor expressed that she had consistently attended her appointments and had improved significantly.

¶8. In 2016, Brown was awarded temporary legal and physical custody of the minor child subject to Anslum's visitation rights. By this time, however, K.B. had already been living with Brown since August 2014—except when Brown's mother kept K.B. Anslum filed a petition for sole custody of K.B.

¶9. After a three-day trial, the chancellor awarded the parties joint physical and legal custody with the parties alternating their regular physical custody of K.B. Brown timely

---

[2] Brown testified that he believed that Anslum was taking Xanax, Adderall, Trazodone, Hydrocodone, and Ambien. Anslum testified that at one point in time she had been prescribed Diazepam, Seroquel, Enalapril, Valium, and Anipryl. However, Anslum maintains that almost all of the prescriptions required a doctor's visit to retrieve them.

appeals.

## STANDARD OF REVIEW

¶10. In *Carter v. Escovedo*, 175 So. 3d 583, 585 (¶7) (Miss. Ct. App. 2015), this Court

stated:

> In child-custody decisions, the polestar consideration is the best interest of the child. We cannot substitute our judgment for the chancellor's. Instead, our standard of review is quite narrow. We only reverse child-custody determinations if the chancellor is manifestly wrong, clearly erred, or applied the wrong legal standard. When chancellors properly apply and consider the *Albright* [3] factors, there is no manifest error.

(Citations omitted).

## DISCUSSION

**I.     Whether parties have to expressly apply for joint custody in order for the chancellor to award joint custody.**

¶11. Brown argues that the parties have to make an express "application" asking for joint

custody in order for the chancellor to order joint custody. However, Brown does not cite any

authority in favor of his argument outside of Mississippi Code Annotated section 93-5-24(2)-

(3) (Rev. 2013). This code section states in part:

> (2) Joint custody may be awarded where irreconcilable differences is the ground for divorce, in the discretion of the court, upon application of both parents.

> (3) In other cases, joint custody may be awarded, in the discretion of the court, upon application of one or both parents.

¶12. This Court has held that the application of joint custody may be made by one or both

parents if the arrangement is in the best interest of the child. *See Crider v. Crider*, 904 So.

---

[3] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

2d 142, 148 (¶16) (Miss. 2005). As Anslum pointed out in her brief, in irreconcilable differences cases the court may award joint custody when the parties request the court to determine custody. The Mississippi Supreme Court has held that "when parties consent in writing to the court's determination of custody, they are consenting and agreeing to that determination and this meets the statutory directive of 'joint application' in § 93-5-24(2)." *Id*. at 148 (¶15). Thus, a mere request to determine custody satisfies the "application" requirement. *Id*.

¶13. Accordingly, we find this issue is meritless.

## II. Whether the chancellor improperly analyzed and applied the *Albright* factors.

¶14. Next, Brown argues that the chancellor erred in his analysis of the *Albright* factors. Specifically, Brown argues that the chancellor erred when weighing the following seven factors:

> (1) age, health, and sex of the child; (2) a determination of the parent who had the continuity of care prior to the separation; (3) which [parent] has the best parenting skills and which [parent] has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) moral fitness of the parents; and (7) other factors relevant to the parent-child relationship.

*See Hollon v. Hollon*, 784 So. 2d 943, 947 (¶12) (Miss. 2001) (citing *Albright*, 437 So. 2d at 1005).

¶15. "In order to determine whether or not the chancellor was manifestly wrong, clearly erroneous or abused his discretion in applying the *Albright* factors, we review the evidence and testimony presented at trial under each factor to ensure his ruling was supported by the

5

record." *Id.* at (¶13).  However, we note that the chancellor has "the ultimate discretion to weigh the evidence the way he sees fit." *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003).

### A.     Age, Health, and Sex of the Child

¶16.    The chancellor found this factor to be neutral because K.B.'s age would not pose as a problem for transportation.  Brown asserts that the chancellor erred because he did not consider the child's stability under this factor. This Court has previously found that the chancellor may consider the child's age, health, and sex together as a single factor or separately.  *See Flowers v. Flowers*, 90 So. 3d 672, 680 (¶30) (Miss. Ct. App. 2012). However, Brown fails to cite any authority that supports broadening this factor to include stability.  "[F]ailure to cite any authority is a procedural bar, and [the] reviewing court is under no obligation to consider the assignment." *In re Estate of Forrest*, 165 So. 3d 548, 550 (¶7) (Miss. Ct. App. 2015).

¶17.    We acknowledge that the chancellor actually considered Anslum's stability when favoring Brown in the "stability of the home environment" factor.  Therefore, the chancellor did not err in finding that this factor was neutral, and this issue is meritless.

### B.     Continuity of Care Prior to the Separation

¶18.    Brown disagrees with the chancellor's determination that the continuity of care factor was neutral.  He does not agree that Anslum exercised primary care for approximately two years prior to Brown obtaining physical custody of K.B.  Brown uses the testimony of three witnesses to support his argument:  (1) his mother, Marcia, testified that both parties took

6

care of the minor child prior to the separation; (2) Anslum's alleged ex-husband, Josh Cox, testified about his dissatisfaction with Anslum's performance as a stay-at-home mother and wife; and (3) Shirley Franklin, Anslum's grandmother, testified that others took care of the minor child while Anslum was admitted in Brentwood Hospital.

¶19. The chancellor has the ability to weigh the evidence as he sees fit including, "the credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation . . . ." *Brown v. Crum*, 30 So. 3d 1254, 1259 (¶16) (Miss. Ct. App. 2010) (citing *Johnson*, 859 So. 2d at 1014 (¶36)).

¶20. The chancellor found that there was evidence that both parties were a part of K.B.'s life, but that Anslum had exercised primary physical care for approximately a year or two as a stay-at-home mother. Therefore, the factor was neutral, and we find no error with the chancellor's finding of neutrality.

### C. Parenting Skills and the Willingness and Capacity to Provide Primary Child Care

¶21. Brown disagrees that this factor favored him only slightly. The chancellor reasoned that Anslum had matured into a good parent and no incidents were reported in over two years. As stated above, "the chancellor has the ultimate discretion to weigh the evidence the way he sees fit." *Johnson*, 859 So. 2d at 1013-14 (¶36). The chancellor chose not to hold much weight to the incidents or evidence that occurred before or in August 2014—which he

7

had the discretion to do.[4]  Therefore, we decline to find that the chancellor erred in finding that this factor favored Brown slightly.

### D.    Employment of the Parent and Responsibilities of that Employment

¶22.    The chancellor found that this factor favored Anslum because she was able to stay at home with K.B. and her other children.  J.C. Warrington, Anslum's husband, testified that Anslum was a good stay-at-home mother.  However, Brown argues that the chancellor erred because of the possibility of Anslum's husband leaving her without any financial support.

¶23.    "This factor appears to be applied in two ways: either to prefer a parent who draws an income over one who does not, or, more often, to prefer a parent who works less or not at all and can therefore spend more time with his children."  *Owens v. Owens*, 950 So. 2d 202, 210 (¶26) (Miss. Ct. App. 2006).  Although Brown would have preferred for the chancellor to have applied the factor as the former, the chancellor had the discretion to view the factor as the latter.  The chancellor chose to look at employment as time away from K.B.  However, the chancellor acknowledged that K.B. would be attending school soon, so it did not heavily weigh in Anslum's favor.  Therefore, we find no error in the chancellor's findings regarding this issue.

### E.    Physical and Mental Health and Age of the Parents

---

[4] At the close of the trial, the chancellor asked whether there were any incidents between August 2014 and October 20, 2016, that showed or illustrated that the Court should find Anslum to be an unfit mother. The GAL responded "no." Further, the chancellor asked whether there were any evidence of irresponsibility, incidents of intoxication, drug impairment, or any fights or anything of the like. The GAL answered in the negative again. No one brought forth any additional evidence to the contrary.

¶24.    The chancellor found this factor to be neutral because there was no evidence of Anslum's instability since August 2014.  "Evidence showed that [Anslum] has a life long problem with depression which is now being successfully treated."  However, Brown disagrees with the chancellor's findings.

¶25.    The chancellor never stated that Anslum's problems were successfully treated. Rather, the chancellor noted that they were *being* successfully treated. Brown has misinterpreted the chancellor's words within this factor.  The chancellor could have chosen to allocate more weight to this factor, but again it was within the chancellor's discretion. *Johnson*, 859 So. 2d at 1013-14 (¶36).  Moreover, neither the chancellor nor the GAL saw Anslum's instabilities early on as a hindrance to her ability to be a fit mother in the future. Accordingly, we find no error.

F.    *Moral Fitness of the Parents*

¶26.    The Court concluded that there was not any evidence to demonstrate that either party was unfit to parent K.B.  But, Brown disagrees with the chancellor's findings because of Anslum's past relationships with men and inability to control her personal life.  However, this Court has affirmed a chancellor's decision when the chancellor favored a parent who had issues in the past but chose to turn his or her life around. *See Williams v. Stockstill*, 990 So. 2d 774, 778 (¶17) (Miss. Ct. App. 2008).

¶27.    The chancellor stated that both parents had instability in the past, but both had settled down and appeared to have stable marital relationships.  Accordingly, we find no error.

G.    *Other Factors Relevant to the Parent-Child Relationship*

9

¶28. The Court weighed the fact that K.B. would be able to grow up with her siblings in Anslum's favor. Brown does not believe that this fact that Anslum had two other children should be a factor that weighs in her favor. This Court has previously held that "there was no requirement that the chancellor specifically address the question of siblings and custody." *C.A.M.F. v. J.B.M.*, 972 So. 2d 656, 661 (¶23) (Miss. Ct. App. 2007). Further, it "is not a separate *Albright* factor but a question which the chancellor may consider along with the best interest of the child." *Id.* Therefore, this is a factor that the chancellor has the discretion to weigh as he sees fit, and we find no error.

### III. Guardian Ad Litem Report and Recommendation

¶29. While Brown did not mention the chancellor's deviation from the GAL report, we think it is important to note that the GAL recommended that K.B.'s physical custody remain with Brown, and Anslum be given the standard visitation that usually is granted to non-custodial parents. However, the chancellor found inconsistencies between the GAL's recommendations and her testimony. The chancellor noted that the GAL voiced concerns about Anslum taking medication; however, during cross examination, the GAL admitted that there had been no incidents involving Anslum that concerned her since August 2014. Moreover, the chancellor noted that K.B. needed to be allowed to continue to bond with Anslum. As a result, the chancellor awarded joint legal and physical custody to both Brown and Anslum.

¶30. We have previously held that "only when the appointment of the guardian is mandatory and the chancellor disagrees with the guardian's report will we require the

chancellor to summarize the guardian's recommendation and why the chancellor chose to disregard it." *Tanner v. Tanner*, 956 So. 2d 1106, 1109 (¶13) (Miss. Ct. App. 2007). The chancellor properly listed and summarized the GAL recommendation and his reason for deviating.

## CONCLUSION

¶31. Brown asserts that more of the factors should have weighed in his favor. But, the *Albright* factors are "not a mathematical equation." *Hall v. Hall*, 134 So. 3d 822, 827 (¶19) (Miss. Ct. App. 2014) (citing *Lee v. Lee*, 798 So. 2d 1284, 1288 (¶15) (Miss. 2001)). Therefore, "the chancellor has the ultimate discretion to weigh the evidence the way he sees fit." *Id*.

¶32. Accordingly, we find that the chancellor did not err in awarding Brown and Anslum joint physical and legal custody of K.B. Further, the chancellor's on-the-record analysis was supported by substantial evidence.

¶33. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON AND GREENLEE, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY TINDELL, J.**

**CARLTON, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶34. I concur with the majority's finding that no issue exists as to Brown's argument regarding the application for joint custody. However, I find that the evidence in the record fails to support the chancellor's award of joint custody of K.B. to Brown and Anslum. Since I find that the chancellor abused his discretion in awarding joint custody, I would therefore

reverse and remand.

¶35.    I submit that the chancellor erred in his findings regarding the following *Albright*[5] factors, which in turn led to the chancellor's erroneous award of joint custody:  continuity of care, parenting skills and willingness to provide primary child care, physical and mental health and age of the parents, and moral fitness of the parents.  When reviewing an appeal of a child-custody decision, "our polestar consideration, like the chancellor's, must be the best interest of the child."  *O'Briant v. O'Briant*, 99 So. 3d 802, 805 (¶12) (Miss. Ct. App. 2012); *see also Smith v. Smith*, 206 So. 3d 502, 512 (¶24) (Miss. 2016).  Upon review, we cannot substitute our judgment for that of the chancellor; rather, "[w]e may only reverse a child-custody determination if the chancellor [was] manifestly wrong, clearly erred, or applied an erroneous legal standard."  *O'Briant*, 99 So. 3d at (¶13).  "When a chancellor properly applies and considers the child-custody factors from *Albright*, . . . no manifest error [exists]."  *Id*.

¶36.    Regarding the factor of continuity of care, the chancellor found "[t]he continuity of care is neutral although the [c]ourt recognizes that [Brown] has exercised primary physical care [of K.B.] for approximately a year.  Before that time, [Anslum] exercised primary physical care for approximately two years."  However, the record reflects that Brown's mother, Marcia, testified that although both Anslum and Brown acted as K.B's primary care givers while they were still in a relationship, K.B. had actually "been with [Brown] the majority of the time" since their separation.  Anslum's alleged former husband, Josh Cox,

---

[5] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

12

stated that he and Anslum moved in together a little less than a year after she and Brown separated. Cox testified that during this time, he often had to care for the children because Anslum's alcohol and substance abuse left her unable to provide care.

¶37. The chancellor held that the parenting skills factor "favor the father only slightly," explaining that Anslum made bad choices "early on in [K.B.]'s life." The chancellor opined that "evidence indicates that [Anslum] has since matured into a good parent and no such incidents have been reported in over two years." However, as stated, Josh Cox's testimony reflects that Anslum struggled with alcohol and substance abuse issues during the period of February 2014 until approximately May 2014, showing a lack of stability. The record reflects that at the time of trial, Anslum still received treatment for her anxiety from Dr. Joseph Kwentus, a psychiatrist. The record also reflects that Anslum had three children by three different men and that Anslum became pregnant by Warrington after only knowing him five or six months. Based on my review of the record, this factor clearly favors Brown.

¶38. The chancellor found that the willingness and capacity to provide child care "favors [Anslum,] who is a stay at home mom." The chancellor stated, however, that "both parents and their spouses are willing to care for [K.B.] and have extended families who are also willing to step in and help when needed." The chancellor also stated that he considered Warrington's testimony that "he intends to obtain a larger home for his family in order to have more space for the children." Brown, however, testified at trial that when he and Anslum lived together, he was the person who generally bathed and dressed K.B. on a daily basis. Brown also stated that during this time, he would take off work and care for K.B. as

13

needed. Brown testified that he is currently employed in a job that provides him with sufficient income to care for K.B. Brown asserted that his job provides him with the flexibility to take off work and care for K.B. if needed. Brown also testified that K.B. was "a daddy's girl," and he explained that the two are very close. I therefore submit that this factor favors Brown.

¶39. The chancellor held that the factor regarding the physical and mental health of the parents was neutral, explaining that "[w]hile there is evidence of some instability early on, particularly with [Anslum], the testimony of the GAL at trial showed that since August 2014, there have been no further incidents that would indicate that she would be an unfit mother or that she was continuing in her previous irresponsible behavior. Evidence showed that [Anslum] has a life[-]long problem with depression which is now being successfully treated." Trial testimony reflects that prior to August 2014, Anslum suffered from anxiety and depression and abused alcohol and controlled substances. Testimony also reflects that in the years after her separation from Brown, Anslum required treatment at Brentwood Hospital on two occasions, including treatment for a drug overdose in August 2014. Anslum admitted at trial that she currently takes Valium and Enalapril to treat her anxiety and a panic disorder. The GAL also testified at trial, and set forth in her report to the chancellor, a description of two altercations where Anslum faked injuries and attempted to make it appear that someone hurt her. I submit that the record reflects that this factor favors Brown and that the record fails to support the chancellor's finding of this factor as neutral.

¶40. Regarding the moral-fitness factor, the chancellor stated that "[e]arly on in this case,

14

it appeared that moral fitness would have favored [Brown]." The chancellor acknowledged Anslum's prior instability but held that "since she met and married J.C. Warrington, [Anslum] seems to have settled down." The chancellor ultimately concluded that "there was no evidence presented that showed [Anslum] to be morally unfit to be a mother to [K.B.]. Neither was there any evidence presented that would disqualify [Brown] from being morally fit to parent [K.B.]." However, as stated, trial testimony shows that for years Anslum abused alcohol and controlled substances, and she has even overdosed on drugs on more than one occasion since her separation from Brown. Anslum also currently suffers from anxiety and receives medical treatment. As stated, the record also reflects that Anslum had three children by three different men and that Anslum became pregnant by Warrington after only knowing him five or six months. The record reflects that the evidence shows this factor clearly favors Brown.

¶41. The GAL testified that based on her observations of K.B., both parties, and the homes of both parties, she recommended that Brown should have permanent primary physical custody of K.B. The GAL explained that Brown's home "is stable. It's adequate. That's where she's been. Bryce has been stable and he has been able to provide for her. She is in a day care setting which provides her a routine. It provides her education to help her to prepare for what lies ahead in kindergarten and the rest of her education." The GAL opined that K.B. "should certainly have visitation" with Anslum, though.

¶42. Regarding the GAL's report and recommendation, the chancellor set forth in his judgment that he "must disagree with the conclusions and recommendations as written." The

chancellor explained that he felt inconsistencies existed between the GAL's report and her trial testimony. In acknowledging the importance of bonding with other siblings, the chancellor also opined that he felt that the GAL "has not given enough consideration to the entire family dynamic when making her recommendations." However, upon review of the record, I do not find the GAL's report inconsistent with the GAL's testimony or lacking in consideration of the entire family dynamic.

¶43. The chancellor also stated that "[w]hile not a deciding factor in the [c]ourt's decision, it is also noted that [K.B.] is a young female child and should be allowed more time to continue to bond with her mother." The record shows that K.B. was born on April 15, 2013, and she was three years old at the time of trial. Although the chancellor did not expressly name the tender-doctrine in his opinion, we recognize that "[a]ccording to the tender-years doctrine, if a child is of such tender age as to require the mother's care for [her] physical welfare, [she] should be awarded to the mother's custody." *Montgomery v. Montgomery*, 20 So. 3d 39, 44 (¶22) (Miss. Ct. App. 2009) (internal quotation marks omitted). However, the supreme court has held that "the tender years doctrine has all but been subsumed into the *Albright* analysis." *Lackey v. Fuller*, 755 So. 2d 1083, 1089 (¶30) (Miss. 2000). Now, "the age of a child is simply one of the factors that we consider in determining the best interests of the child." *Id*.

¶44. A review of the evidence in the record fails to support the findings of the chancellor and fails to support the award of joint custody. After my review of the record, I find that the chancellor erred in his application of several *Albright* factors. I would therefore reverse the

16

chancellor's award of joint custody of K.B. to Brown and Anslum and remand for further proceedings consistent with this opinion.

**TINDELL, J., JOINS THIS OPINION.**