# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00568-COA

**MELVIN SHIRLEY JR., A MINOR, BY AND THROUGH HIS NEXT FRIEND AND MOTHER, EVA SHIRLEY**                                     **APPELLANT**

**v.**

**MARCHEYELL WHITEHEAD, A MINOR, BY AND THROUGH HER NEXT FRIEND AND MOTHER, JENNIFER MORGAN**                                     **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/16/2018 |
| TRIAL JUDGE: | HON. KENNETH M. BURNS |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | GARY GOODWIN |
| ATTORNEY FOR APPELLEE: | LISA LYNN MEGGS |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 10/15/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., TINDELL AND LAWRENCE, JJ.**

**J. WILSON, P.J., FOR THE COURT:**

¶1.     Melvin Shirley Jr. and Marcheyell Whitehead had a daughter, Paisley, in 2014. Shirley and Whitehead were both minors and were not married or dating when Paisley was born.  When Paisley was five months old, Whitehead filed a petition for custody, and the chancellor granted her temporary custody with visitation for Shirley.  The chancellor also appointed a "best interests" guardian ad litem ("GAL") for Paisley.

¶2.     The GAL found that the issue of custody was a close call but recommended that the court award physical custody to Shirley.  However, after a trial and a thorough *Albright*

analysis,[1] the chancellor granted permanent physical custody to Whitehead with visitation for Shirley. On appeal, Shirley argues that the chancellor's findings are not supported by substantial evidence and that the chancellor abused his discretion by awarding custody to Whitehead. We find no reversible error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     Whitehead became pregnant with Shirley's child while they were still in high school. She gave birth to their daughter, Paisley, in 2014. When Paisley was born, Whitehead and Shirley were no longer dating. Whitehead and Paisley initially lived with LaRhonda Weatherspoon, a close family friend, in Columbus. Shirley lived with his mother in Columbus when Paisley was born, but he later moved to Jackson to attend Belhaven University, where he was on the football team. Shirley visited Paisley and Whitehead every day during the first few weeks after Paisley's birth, but he visited less often when Whitehead started dating another man. Shirley later left Belhaven and moved back to Columbus, where he found a full-time job and took some online courses.

¶4.     In September 2014, Whitehead and Paisley moved to Arkansas to live with Whitehead's mother, Jennifer Wallace. About two weeks later, Weatherspoon asked if Paisley could visit her in Columbus. Whitehead agreed, and Weatherspoon drove to Arkansas and returned to Mississippi with Paisley. On October 13, 2014, Weatherspoon enrolled Paisley in a daycare in Columbus.

¶5.     On October 24, 2014, Shirley attempted to sign Paisley out of daycare. The police

---

[1] *See Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

were called, but after Shirley showed them a birth certificate identifying him as Paisley's father, he was allowed to leave with her. On October 29, Whitehead filed a petition for custody and other relief and a petition for a writ of habeas corpus. Shirley answered and also sought custody of Paisley.

¶6. In December 2014, the chancellor granted Whitehead temporary physical custody of Paisley with specified visitation for Shirley. The chancellor also ordered the parties not to take Paisley out of state without prior court approval. Finally, the chancellor appointed a GAL to investigate and make recommendations regarding Paisley's "best interests."

¶7. The GAL interviewed Whitehead and Shirley and their respective mothers. She also reviewed Whitehead's deposition, text messages and Facebook posts, photographs, a video of a fight between Whitehead and another woman, and Paisley's medical records. After her investigation, the GAL prepared a report that included an *Albright* analysis. The GAL found that two factors favored Whitehead, three factors favored Shirley, and all other factors were neutral. The GAL stated that she was "leaning toward" recommending Shirley as Paisley's custodial parent, but she reserved her final recommendation until after trial. After hearing the evidence at trial, the GAL did not change her recommendation.

¶8. A one-day trial on custody was held in August 2017. Whitehead testified that she had moved four times since Paisley's birth. As noted above, she moved to Arkansas to live with her mother in September 2014. She moved back to Columbus the next month due to the dispute over Paisley's custody. Whitehead remained in Columbus until approximately May 2016, when she moved to Texas. Around November 2016, she moved to Gautier,

3

Mississippi, to live with her mother, who had relocated there.

¶9. At the time of trial, Whitehead was living in a three-bedroom apartment in Gautier with Paisley and her son from another relationship. She was working the night shift at the front desk of a hotel while also taking classes at Virginia College in Biloxi. Paisley was in daycare while Whitehead was in school. Whitehead's mother kept Paisley when Whitehead worked at night.

¶10. Whitehead admitted that there was a five-month period beginning around November 2016, when she did not allow Shirley to see Paisley. Whitehead testified that she withheld visitation because Shirley was allowing a woman who had allegedly assaulted her to spend time with Paisley.[2] Whitehead admitted at trial that she was wrong to withhold visitation.

¶11. Whitehead's mother (Wallace) testified that she keeps Paisley when Whitehead has to work at night. Wallace lives near Whitehead, and she testified that Whitehead is a good mother and takes good care of her children while working and going to school.

¶12. At the time of trial, Shirley was living with his mother in Columbus and working full-time. He claimed that he had been unable to continue college in Jackson because of the custody dispute. His current job required him to travel four days per week, but he testified that he was about to get a new job as a correctional officer at the Lowndes County Detention Center, which would not require him to travel. He testified that he took care of Paisley when she was with him and that he loved spending time with her. He testified that they play, read

---

[2] The woman and Whitehead had been close friends in the past, but their friendship deteriorated to the point that they got into a physical fight in front of Paisley while Whitehead was pregnant with her son. Whitehead required medical attention due to her high-risk pregnancy and the fight. The chancellor reviewed a video of the fight.

4

books, and spend time with his family. He is close with friends and family in the area and takes Paisley to church regularly. Shirley believed that he would be a better custodial parent for Paisley because he would spend more time with her and provide better care. He testified that he intends to get his own apartment once he has saved enough money.

¶13. Shirley criticized Whitehead for keeping Paisley from him. He also alleged that Whitehead had not done a good job of providing or caring for Paisley. He testified that Paisley had gotten a staph infection and that Whitehead had not provided proper treatment for it. In her testimony, Whitehead acknowledged that Paisley had a staph infection in the past, but she denied that she had neglected Paisley or failed to treat the infection. Whitehead also testified that Paisley was clean and that she took good care of her.

¶14. Shirley's mother, Eva, testified that Shirley was a family-oriented person and spent as much time as possible with Paisley. Eva said that Paisley would benefit from a close-knit extended family in the Columbus area. Eva testified that Shirley had come home from Belhaven every weekend that he could to see Paisley. Eva testified that Shirley played with Paisley and took full responsibility for her care whenever he had visitation. She said Shirley was a good father and would take good care of Paisley.

¶15. Eva expressed concerns that Whitehead was not doing everything that she could to keep Paisley clean and healthy. Eva testified about an incident when Whitehead called to tell her that she had taken Paisley to the emergency room for a staph infection and was on her way to the drugstore for a prescription medicine. When Eva met Whitehead at the drugstore, Whitehead discovered that Paisley's Medicaid registration had expired. Eva then paid for

the prescription, and she took Paisley home to help treat the staph infection. Eva testified that she took photographs of Paisley that night because she did not appear to have been bathed and her clothes were dirty.

¶16. After the hearing, the chancellor entered an opinion and final judgment granting joint legal custody to Whitehead and Shirley, physical custody to Whitehead, and specified visitation to Shirley. The chancellor found that three *Albright* factors favored Shirley, two favored Whitehead, and all other factors were neutral. The chancellor also found that two "other factors" were relevant under *Albright*: that Paisley loved her younger half-brother (Whitehead's son), who also lived with Whitehead, and that Whitehead had violated a prior court order by removing Paisley from the state and withholding visitation. The chancellor explained that he disagreed with the GAL's custody recommendation because Paisley had been with Whitehead her entire life, because Whitehead appeared to have matured, and because he was reluctant to separate Paisley from her half-brother.

**ANALYSIS**

¶17. On appeal, Shirley argues that the chancellor's findings regarding several *Albright* factors are not supported by substantial evidence, that the chancellor failed to address the primary basis of the GAL's recommendation, and that the chancellor's custody decision was an abuse of discretion.[3]

---

[3] Whitehead failed to file a brief on appeal. Instead, her attorney submitted a letter advising the Court that Whitehead could not afford to pay for a brief. In some cases, this could be taken as a confession of error, but when "child custody is at issue, the Court is compelled to review the record, despite a failure to file a brief by [the appellee]." *Muhammad v. Muhammad*, 622 So. 2d 1239, 1243 (Miss. 1993).

¶18. "A chancellor's custody decision will be reversed only if it was manifestly wrong or clearly erroneous, or if the chancellor applied an erroneous legal standard." *Smith v. Smith*, 97 So. 3d 43, 46 (¶7) (Miss. 2012). "[T]his Court cannot reweigh the evidence and must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence." *Hall v. Hall*, 134 So. 3d 822, 828 (¶21) (Miss. Ct. App. 2014). The relevant question is whether the chancellor's decision is supported by the evidence, not whether we agree with it. *Hammers v. Hammers*, 890 So. 2d 944, 950 (¶14) (Miss. Ct. App. 2004).

¶19. In child custody cases, the "polestar consideration . . . is the best interest and welfare of the child." *Albright*, 437 So. 2d at 1005. In determining where the child's best interest lies, the chancellor should consider the following factors: (1) age, health, and sex of the child; (2) which parent had "continuity of care prior to the separation"; (3) parenting skills; (4) willingness and capacity to provide primary child care; (5) both parents' employment responsibilities; (6) physical and mental health and age of the parents; (7) emotional ties between parent and child; (8) moral fitness; (9) "the home, school and community records of the child"; (10) the child's preference, if the child is at least twelve years old; (11) the stability of the home environment and employment of each parent; and (12) any "other factors relevant to the parent-child relationship" or the child's best interest. *Id.*

¶20. *Albright* does not require the chancellor to award custody to the parent who "wins" the most factors. *Blakely v. Blakely*, 88 So. 3d 798, 803 (¶17) (Miss. Ct. App. 2012). "The point of *Albright* is to identify the custody arrangement that would be in the child's best interest—not to determine what is in either parent's best interest or which parent is the better

7

person." *Vassar v. Vassar*, 228 So. 3d 367, 375 (¶26) (Miss. Ct. App. 2017). In addition, the chancellor is not required to find that each factor favors one parent or the other. *Harden v. Scarborough*, 240 So. 3d 1246, 1251 (¶11) (Miss. Ct. App. 2018). The chancellor is only required to consider each factor that is applicable to the case and determine what custody arrangement would be in the child's best interest. *Id.* "We review the chancellor's application of the factors for manifest error, giving deference to the weight that he assigned each factor." *Id.*

¶21. Shirley argues that the chancellor erred in his consideration of six of the twelve *Albright* factors and the two additional factors the chancellor considered. We will address each challenged factor in turn.

¶22. ***Age, Health, and Sex of the Child.*** The chancellor found that "[t]his factor slightly favor[ed]" Shirley because the evidence indicated that Paisley's health issues arose while she was in Whitehead's care. Shirley argues that this should have been given more weight because Paisley's health issues were attributable to "neglect or inattention" on the part of Whitehead. However, we do not reweigh the evidence or the significance that the chancellor assigns to each factor. *Harden*, 240 So. 3d at 1251 (¶11). There was also testimony that Whitehead was a good and attentive mother, and we cannot say that the chancellor clearly erred or abused his discretion by finding that this factor only slightly favored Shirley.

¶23. ***Continuity of Care.*** The chancellor found that this factor favored Whitehead because Paisley had lived with Whitehead for nearly her entire life. Shirley complains that Whitehead withheld visitation for a period of time, and he argues that he provides "more productive"

care than Whitehead. However, there is no dispute that Paisley has always lived primarily with Whitehead, and we cannot say the chancellor clearly erred or abused his discretion in finding that this factor favored Whitehead.

¶24. ***Parenting Skills and Willingness and Capacity to Provide Child Care.*** The chancellor found that this factor slightly favored Shirley.[4] The chancellor found that although both parents relied in part on others for childcare, both parents desired to be Paisley's primary caregiver. The chancellor acknowledged that Shirley and Eva both "expressed serious concerns" about Whitehead's alleged inattention to Paisley's medical needs. The chancellor also acknowledged that when Paisley was an infant, she alternated weekends between Shirley and Weatherspoon's mother, Vicky Lee. However, Whitehead denied that Paisley stayed with Lee because she (Whitehead) did not want to care for her, and that arrangement had ended two years before trial anyway.

¶25. On appeal, Shirley argues that this factor should have favored him "overwhelmingly," not just "slightly," as the chancellor found. However, as stated above, there was also testimony that Whitehead is a good, attentive, and committed mother. In light of that testimony, the chancellor did not clearly err or abuse his discretion by finding that this factor only "slightly" favored Shirley.

¶26. ***Moral Fitness.*** The chancellor found that this factor favored Shirley, but he also found that both parents had "matured" and were "now morally fit to care for Paisley." The chancellor noted that each party made allegations about the other's moral fitness. On appeal,

---

[4] The chancellor combined the parenting skills factor and the willingness and capacity to provide child care factors.

9

Shirley argues that the chancellor's finding that Whitehead had matured and was now morally fit to raise Paisley is not supported by substantial evidence. Specifically, Shirley contends that the chancellor should not have credited Whitehead's testimony or Wallace's testimony because it was "self-serving." Shirley further argues that this factor should have been "given great weight" in his favor. These arguments are without merit. The "power" to "judge[] the credibility of the witnesses" "lies with [the chancellor] alone." *Irle v. Foster*, 175 So. 3d 1232, 1237 (¶32) (Miss. 2015). Moreover, even after finding that Whitehead had matured, the chancellor still found that this factor favored Shirley—just not as much as Shirley would have liked. We find no clear error or abuse of discretion in the chancellor's application of this factor. *Harden*, 240 So. 3d at 1251 (¶11).

¶27. *Home, School, and Community Record.* The chancellor found that this factor favored Whitehead because Paisley had begun attending preschool in Gautier. He also noted that Paisley's maternal grandmother and step-grandfather lived nearby. Shirley argues that this factor should have favored him based on the GAL's report. The GAL found that Shirley had a large and supportive extended family in the Columbus area and that Paisley would have a "very different" life with Shirley in Columbus. However, we cannot say that the chancellor clearly erred or abused his discretion by assigning some weight to the fact that Paisley had begun preschool in Gautier.

¶28. *Stability of Home Environment and Employment of Each Parent.* The chancellor found this factor to be neutral. Shirley argues that the factor should have favored him because he has lived with his mother and maintained employment since leaving Belhaven.

10

Shirley says that he has demonstrated "a desire for advancement." Shirley argues that Whitehead, in contrast, has moved several times, "is dependent on government assistance," and works at a job that can "only be described as entry level for personal services." These arguments are all without merit. Whitehead has her own apartment and is employed while also attending school. The chancellor did not clearly err or abuse his discretion by finding that this factor was neutral.

¶29. *Other Factors.* As noted above, the chancellor considered two other factors in his *Albright* analysis: (1) Paisley loves her half-brother (Whitehead's son); and (2) Whitehead violated prior court orders by removing Paisley from the state and withholding visitation. The chancellor found that the first factor favored Whitehead, but he did not specifically state how he weighed the second factor. The chancellor did indicate that Whitehead's violation of prior court orders was at least partially attributable to her youth and immaturity.

¶30. Shirley argues that there was no substantial evidence to support the chancellor's consideration of Paisley's half-brother. He argues that the evidence only showed "a normal sibling relationship" and that Paisley "would adjust to any separation." However, Whitehead testified that Paisley was very close to her little brother, and the GAL also acknowledged that this factor favored Whitehead. "[T]his is a factor that the chancellor has the discretion to weigh as he sees fit" as part of his *Albright* analysis. *Brown v. Anslum*, 270 So. 3d 69, 75 (¶28) (Miss. Ct. App. 2018). The chancellor did not clearly err or abuse his discretion by considering the relationship between Paisley and her half-brother.

¶31. Shirley also argues that the Whitehead's violation of court orders should have been

weighed in his favor, and he argues that the chancellor erred by attributing some of Whitehead's conduct to her youth and immaturity. However, there is no rule that violations of court orders must be given any particular weight in an *Albright* analysis. *Cf. Ash v. Ash*, 622 So. 2d 1264, 1266 (Miss. 1993) (reasoning that chancellor should punish contempt directly rather than resorting to a modification of custody). We find no abuse of discretion in the chancellor's consideration of this issue.

¶32. ***GAL Report.*** Shirley also complains that the chancellor did not address a factor that the GAL found significant: that Shirley has a supportive family in Lowndes County, including a mother who would be a good role model for Paisley. This argument is also without merit. When the appointment of a GAL is required by law because there are allegations of abuse or neglect, the chancellor's findings must include reasons for rejecting the GAL's recommendations. *Floyd v. Floyd*, 949 So. 2d 26, 28-29 (¶¶7-8) (Miss. 2007). However, when the appointment of a GAL is discretionary, the chancellor is not required to detail the reasons for his disagreement with the GAL's recommendation. *Kaiser v. Kaiser*, No. 2018-CA-00278-COA, 2019 WL 2428757, at *5 (¶21) (Miss. Ct. App. June 11, 2019); *Lowrey v. Simmons*, 186 So. 3d 907, 913 (¶¶12-13) (Miss. Ct. App. 2015), *cert. denied*, 202 So. 3d 1268 (Miss. 2016). Here, the appointment of a GAL was discretionary. Therefore, the chancellor was not required to address the GAL's report in his opinion and final judgment.

¶33. Moreover, the chancellor did acknowledge the GAL's report and conclusion, and he summarized the basic reasons why he had reached a different conclusion than the GAL: he

concluded that Whitehead had matured, he found it significant that Paisley had lived with Whitehead her entire life, and he was reluctant to separate Paisley from her half-brother. In a case such as this, the function of the GAL is only to provide additional information to assist the chancellor in making his decision. *Hensarling v. Hensarling*, 824 So. 2d 583, 587 (¶10) (Miss. 2002). The responsibility for deciding the case remains with the chancellor. *Id.* The chancellor properly exercised independent judgment in deciding this case.

¶34. Although we have addressed Shirley's arguments factor-by-factor, we conclude by reemphasizing that *Albright* does not require the chancellor to grant custody to the parent who "wins" the most factors. *Blakely*, 88 So. 3d at 803 (¶17). The point of *Albright* is to require the chancellor to consider a nonexclusive set of factors that may or may not be relevant depending on the facts of a particular case. The weight and significance of those factors is then largely left to the discretion of the chancellor in light of the particular facts of each case. In this case, the chancellor's factual findings were not clearly erroneous, and his rationale for granting physical custody of Paisley to Whitehead was not arbitrary or an abuse of discretion. Therefore, the judgment of the chancery court is **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**